UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 17 CR 639-2 |
| MUKGLIS TOMA | Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Defendant Mukglis Toma has filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). R. 130; R. 142.[1] For the reasons that follow, the motion is denied.

**Background**

Mr. Toma, 57, pled guilty in November 2017 to conspiracy to distribute 100 grams or more of heroin, which carried a statutory mandatory minimum sentence of five years imprisonment. In June 2018, Mr. Toma was sentenced to 87 months' imprisonment and five years of supervised release. R. 81, 145. Mr. Toma is currently housed at FCI Oxford in Wisconsin, and the Bureau of Prisons ("BOP") calculates his release date as December 2, 2023. Accordingly, Mr. Toma has served more than 50 percent of his anticipated term of incarceration. He seeks compassionate release on

---

[1] Mr. Toma originally asked in a letter addressed to the Court for an attorney to represent him in filing a motion for compassionate release. *See* R. 130. The letter also described Mr. Toma's underlying medical conditions, the Bureau of Prison's handling of COVID-19, his efforts to rehabilitate himself, and his release plan. *Id.* An attorney from the Federal Defender Program then filed an appearance on behalf of Mr. Toma, R. 130, and later filed a motion for compassionate release, R. 142. This opinion addresses the arguments made in that motion and Mr. Toma's letter.

the grounds that his underlying health conditions place him at a greater risk of serious illness should he contract COVID-19 while in prison. He previously contracted the virus in December 2020, and received two doses of the Moderna vaccine in February and March 2021. R. 147 at 42, 46.

## Standard

Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may modify a term of imprisonment upon a motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal" and 30 days have passed without the BOP filing a motion on the defendant's behalf. In determining whether a sentence reduction under § 3582 is appropriate, courts consider: (1) the factors set forth in 18 U.S.C. § 3553(a); (2) whether "extraordinary and compelling reasons" warrant a reduction in sentence; and (3) whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of establishing extraordinary and compelling reasons to warrant a sentence reduction. *See United States v. Newton,* 996 F.3d 485, 488 (7th Cir. 2021).

## Analysis

The Government concedes that Mr. Toma has exhausted his administrative remedies and that the BOP has not pursued his request for early release. But the parties dispute the extent to which there are extraordinary and compelling reasons justifying Mr. Toma's early release, and disagree over whether the Section 3553(a) factors weigh in Mr. Toma's favor. The Court addresses each issue in turn.

**Extraordinary and Compelling Circumstances.** In determining what constitutes an extraordinary and compelling reason to modify a person's sentence, courts consider the guidance contained in the U.S. Sentencing Guidelines Manual at U.S.S.G. § 1B1.13. The Application Notes describe extraordinary and compelling reasons as including medical conditions, age, and family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The notes also include the following catch-all provision: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C). *Id*. cmt. n.1(d). The Seventh Circuit held in *United States v. Gunn* that the Sentencing Commission's policy statement on what constitutes an extraordinary and compelling reason for compassionate release does not apply to prisoner-initiated motions. 980 F.3d 1178, 1180 (7th Cir. 2020). But the court also noted that "substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of "extraordinary and compelling reasons." *Id*. The court continued that a "judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. Accordingly, the Sentencing Commission's analysis remains instructive, and guides the Court's decision here.

As stated, Mr. Toma argues that his underlying medical conditions present extraordinary and compelling reasons that compel an early release from prison since they place him at a greater risk of severe illness should he contract COVID-19. The first medical condition at issue is Mr. Toma's weight. Current CDC guidelines state that obesity can increase the likelihood of getting severely ill from COVID-19, and that the risk "increases

3

sharply" with an elevated body mass index ("BMI").[2] Obesity is defined as having a BMI of 30 or higher.[3] Mr. Toma's medical records show that he weighed 220.2 pounds in June 2020, 213 pounds in July 2020, and 202.8 pounds in February 2021. R. 147 at 19, 29. A weight of 202.8 pounds, when considered alongside Mr. Toma's height (5 feet, 8 inches), produces a BMI of 30.8. Thus, Mr. Toma was obese in February 2021, which the Government concedes. However, Mr. Toma's medical records do not indicate whether he has been weighed in the past four months. It is therefore unclear whether he is still obese. Nevertheless, because Mr. Toma's most-recent BMI exceeded 30, the Court concludes that he is obese for purposes of this motion and that his obesity demonstrates that there is an extraordinary and compelling reason supporting his early release. *See United States v. Fakhouri*, 2020 WL 7698371, at *3 (N.D. Ill. Dec. 28, 2020) (defendant's obesity was an extraordinary and compelling reason justifying release); *United States v. Rogers*, 2020 WL 4816053, at *2 (N.D. Ill. Aug. 18, 2020) (same).

Mr. Toma also claims that he suffers from mild, controlled asthma.[4] R. 130 at 1; R. 142 at 9; R. 150 at 4-5. He acknowledges that his asthma is not moderate or severe but contends that it is compounded by his obesity and argues that individuals

---

[2] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 15, 2021)

[3] *See* https://www.cdc.gov/obesity/adult/defining.html (last visited June 15, 2021)

[4] While Mr. Toma's obesity, standing alone, serves as an extraordinary and compelling reason justifying his release, the Court will also consider his other medical conditions in light of the Seventh Circuit's recent decision in *United States v. Newton*, which found that a district court abused its discretion by not giving adequate attention to each of the defendant's principal arguments and by failing to consider the "cumulative effect" of his multiple comorbidities. 996 F.3d at 489-90.

with multiple underlying health conditions have a heightened risk of experiencing severe illness if they contract COVID-19. R. 150 at 4-5. He also points to research which purports to show that people who are both obese and asthmatic can suffer from more serious medical outcomes than those who are only obese. *Id.* at 5 (citing Mohammad Hussein, *Asthma in COVID-19 Patients: An extra chain fitting around the neck?*, National Center for Biotechnology Information (2020)).

CDC guidance states that preventative measures for COVID-19 are important "especially if you . . . have multiple . . . health conditions."[5] But the same guidance expressly lists "moderate-to-severe asthma" as one of those conditions, and conspicuously omits any reference to "mild asthma." *See id.; see also Newton*, 996 F.3d at 489 (noting that "district courts must be cautious not to stretch [CDC] guidance beyond what it says"). Moreover, the research that Mr. Toma cites does not distinguish between mild and moderate-to-severe asthma. Instead, it focuses on patients who have "asthma" in general and consistently refers to them as "asthmatic." And while at least one court in this District has found that a defendant's "well controlled" asthma, combined with his obesity, presented an extraordinary and compelling reason justifying his release, the court did not note that CDC guidance differentiates between different kinds of asthma. *See United States v. Washington*, 06-CR-586-3, Dkt. 637 at 3-4 (N.D. Ill. May 7, 2021). For these reasons, the Court is hesitant to conclude based on the current record that Mr. Toma's mild asthma—

---

[5] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 15, 2021)

considered in the context of his obesity—is a separate and independent basis supporting his release. Nevertheless, the Court will make such a conclusion since doing so will not change the outcome of this motion.

Finally, Mr. Toma points out that the BOP has been sharply criticized for failing to prevent the spread of COVID-19 among inmates. R. 142 at 5-8. He argues that prisons and jails remain fertile ground for the virus since inmates live in highly concentrated areas, and he cites a report which found that "COVID-19 case rates among incarcerated people [are] nearly five times higher than in the general population." R. 142 at 6 (citing *To Adhere to Public Health Guidelines and Mitigate COVID-19, Officials Should Use Their Discretion to Minimize Incarceration, Says New Report,* National Academies of Sciences, Engineering, and Medicine (2020)). He also says that FCI Oxford experienced outbreaks in September and December 2020, and that prison officials temporarily moved him and others at the time to an adjacent facility which had "very squalid conditions." R. 130 at 2. Mr. Toma acknowledges that he already contracted COVID-19 and was recently vaccinated, but says that he continues to be at risk of becoming infected again because he cannot practice social distancing or maintain proper hygiene in prison.[6]

Mr. Toma's concern is understandable but speculation about reinfection cannot form the basis for relief. *See United States v. Thompson*, 2020 WL 7771141, at *2-3 (N.D. Ill. Dec. 30, 2020) (defendant's professed concern about reinfection did not

---

[6] Mr. Toma's motion does not state whether he suffers from any lingering symptoms after contracting the virus in December 2020, nor do his medical records.

6

justify compassionate release); *see also United States v. Gold*, 459 F. Supp. 3d 1117, 1120 (N.D. Ill. May 6, 2020) ("[G]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence") (quoting *United States v. Allegra*, No. 15 CR 243, R. 232 at 7 (N.D. Ill. Apr. 13, 2020)). A contrary finding would imply that all inmates should be released, which is neither appropriate nor feasible. And, as of this writing, there are zero active cases of COVID-19 among prisoners and staff at FCI Oxford, suggesting that the chances Mr. Toma—who is fully vaccinated—contracts the virus again are slim.[7] Accordingly, while Mr. Toma's obesity and asthma are extraordinary and compelling reasons to support his early release, his concerns about reinfection are not.

***Section 3553(a) factors.*** Even though there are extraordinary and compelling reasons to grant Mr. Toma the relief he requests, the sentencing factors under 18 U.S.C. § 3553(a) counsel against it. The relevant factors include: the nature and circumstances of the offense; the history and characteristics of the defendant; the risk of recidivism he poses; the need to afford adequate deterrence; whether the sentence would provide the defendant with needed medical treatment in the most effective manner possible; the time remaining on the sentence; and the quality of the release plan. *See id.* § 3553(a)(1)-(4).

The Court starts with the two factors that weigh in Mr. Toma's favor—*i.e.* the time remaining on his sentence, and the quality of his release plan. Mr. Toma has

---

[7] *See* https://www.bop.gov/coronavirus/ (last visited June 16, 2021)

served over 50 percent of his 87-month sentence, and he is scheduled to be released from prison in about two and a half years. Moreover, Mr. Toma and his brother indicated in separate letters to the Court that Mr. Toma, upon being released, would immediately begin working in the family business and spend time caring for his ailing parents. *See* R. 130 at 3; R. 142 at 41; R. 150 at 58. That is a promising release plan.

The other factors cut against releasing Mr. Toma early, however. To begin, Mr. Toma committed a serious crime—conspiring to distribute 100 grams or more of heroin. To make matters worse, Mr. Toma was responsible for supplying the heroin that led to his arrest. Indeed, Mr. Toma's plea agreement stipulated that he provided a middleman with roughly 800 grams of the drug, and then supervised its sale to a confidential informant. R. 67 ¶ 6. Also, Mr. Toma told the middleman prior to the sale that he could supply heroin at different levels of quality (*i.e.* the better the heroin, the more money he charged), and that he was not willing to sell more than one kilogram to the informant because he didn't want to risk a mandatory minimum sentence if he got caught. *Id.* These undisputed facts suggest that Mr. Toma had more heroin available for sale than the 800 grams supporting his conviction, and that he knew at the time of arrest that his actions were fundamentally wrong.

Turning to Mr. Toma's history and characteristics, he committed this crime less than two years after spending more than 20 years in prison for trafficking wholesale amounts of cocaine and marijuana. Mr. Toma's quick return to drug dealing was especially aggravating because he was on supervised release at the time and his family had provided him with a place to live and work. R. 145 at 42-43. Mr. Toma argues that he has used the

8

past few years in prison to better himself, pointing to courses he has completed and his clean disciplinary record. R. 142 at 11. Those are steps in the right direction and the Court hopes Mr. Toma continues to put his best foot forward. But his recent efforts do not diminish his criminal history or his apparent willingness to distribute large quantities of drugs—whether it be heroin, cocaine, or marijuana—into the community.

For similar reasons, the deterrence and recidivism factors weigh against Mr. Toma's early release. As explained at sentencing, it is imperative that Mr. Toma is specifically deterred from committing additional drug crimes once he is released from prison, particularly because his previous drug-related sentence did not dissuade him. R. 145 at 48. A sentence reduction also is not wise from a general deterrence perspective. Heroin is a highly addictive and dangerous drug that has destroyed countless lives. People must know that distributing heroin comes with a steep penalty and that most sentences will be served to term. As for recidivism, Mr. Toma argues that his age, 57, places him at a "very low risk" of being a repeat offender. In support, Mr. Toma relies on Seventh Circuit case law affirming reduced sentences for older individuals, and reports issued by the U.S. Sentencing Commission finding that older people are less likely to recidivate than their younger counterparts. R. 142 at 13. But Mr. Toma's argument would be more convincing if he (1) didn't commit this crime after having served more than 20 years in prison for a very similar offense, and (2) wasn't over the age of 50 at the time of his arrest. *See* R. 145 at 43.

Finally, the Court considers "the need for the sentence imposed to provide the defendant with needed . . . medical care . . . in the most effective manner." 18 U.S.C. §

9

3553(a)(2)(D). Mr. Toma argues that the BOP has historically failed to provide adequate medical care to prisoners, and contends that the situation has worsened during the pandemic. R. 142 at 13-14. He also cites a complaint filed with the Occupational Safety and Health Administration, which alleges that various BOP policies "proliferat[e] the spread of a known and deadly contagion both within our prisons system and to our surrounding communities." *Id.* at 14. As an initial matter, these arguments are unpersuasive because they are generalized in nature and do not bear on Mr. Toma's personal experience at FCI Oxford. *Cf. Newton*, 996 F.3d at 490-91 (prisoners seeking compassionate release should submit individualized evidence rather than make generalized arguments about risk). Furthermore, Mr. Toma's medical record belies the notion that he has not received needed medical care to date. Mr. Toma has been seen by providers on at least six different occasions in the last year or so (R. 147 at 2, 5, 9, 14, 23, 25), was provided an inhaler and an oral steroid when he complained of mild shortness of breath (*id.* at 6-7), and received an x-ray of his lungs in February 2021 after experiencing a dry cough and sinus congestion (*id.* at 76). The x-ray showed that his lungs were clear. *Id.* And while Mr. Toma states in his letter to the Court that the cell he stayed in during quarantine was "filthy," there is a low probability that he will be returning to that cell again. As indicated, Mr. Toma received the Moderna vaccine in February and March of 2021, and there are no active cases of the virus among prisoners and staff at FCI Oxford at this time. It is possible that Mr. Toma could be reinfected in the future, but the CDC

has stated that such cases "remain rare"[8] and that the Moderna vaccine is "highly effective" at preventing COVID-19 among people with underlying medical conditions.[9]

## Conclusion

While Mr. Toma's obesity and asthma constitute "extraordinary and compelling" reasons justifying his early release, the sentencing factors under 18 U.S.C. § 3553(a) counsel against it. Mr. Toma's motion, R. 130 and 142, is accordingly denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: June 16, 2021

---

[8] *See* https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Oct. 27, 2020)

[9] *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html (last updated June 11, 2021)

11